## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| STEVEN C. LLOYD, | ) | Case No. 16-41044-EDK |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | Adversary Proceeding |
| ANNE J. WHITE, Chapter 7 trustee, | ) | No. 18-4027-EDK |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL T. GAFFNEY., | ) | |
| | ) | |
| Defendant | ) | |

### MEMORANDUM OF DECISION

Before the Court is an order directed at Anne J. White (the "Trustee"), the plaintiff in this adversary proceeding and trustee in the underlying Chapter 7 bankruptcy case filed by Steven C. Lloyd (the "Debtor"), requiring the Trustee to show cause as to why the adversary proceeding should not be dismissed for lack of jurisdiction. If the claims brought by the Trustee against Michael T. Gaffney ("Gaffney"), the Debtor's former attorney, are property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1),[1] the Trustee has standing to prosecute them and the matter is properly before this Court. If the claims do not fall within the bankruptcy estate, however, the Trustee does not have standing to pursue them and the adversary proceeding must be dismissed.

---

[1] Unless otherwise stated, all statutory references are to the provisions of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code"). *See* 11 U.S.C. §§ 101 *et seq.*

1

I.   FACTS AND POSITIONS OF THE PARTIES

In 2015, the Debtor sought Gaffney's professional assistance after a judgment creditor had obtained an attachment on the Debtor's residence. Seeking to protect a lot of undeveloped land in Maine, the Debtor and his wife (allegedly acting on Gaffney's advice) transferred their interest in that property to a trust, of which the Debtor's two children and his son-in-law were the beneficiaries. Shortly thereafter, in June 2016, and with the assistance of a different attorney, the Debtor commenced the underlying bankruptcy case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code. Not surprisingly, the Trustee commenced an adversary proceeding against the trust to recover the property as a fraudulent transfer pursuant to § 548 of the Code. That action was eventually resolved through settlement.

The Trustee then commenced the present adversary proceeding against Gaffney. In the complaint, the Trustee raises several claims, each premised on the Trustee's allegation that Gaffney committed malpractice when he advised the Debtor to transfer the Maine property (together, the "malpractice claims").[2] Following an unsuccessful attempt to have the District Court withdraw its reference of the case to this Court, Gaffney filed an answer and the Court set the matter for a pretrial hearing. At the conclusion of that hearing, the Court issued an order requiring the Trustee to show cause as to why the adversary proceeding should not be dismissed for lack of jurisdiction, as it appeared from the allegations in the complaint that the alleged malpractice claims (to the extent they are viable) arose postpetition. Both parties were given an opportunity to brief the relevant issues. Following a non-evidentiary hearing, the Court took the matter under advisement.

---

[2] Specifically, the counts in the complaint are: Count I: Breach of Contract; Count II: Malpractice; Count III: Breach of Fiduciary Duty; Count IV: Unjust Enrichment; Count V: Breach of the Implied Covenant of Good Faith and Fair Dealing; Count VI: Accounting; and Count VII: Violation of M.G.L. Chapter 93A.

2

The Trustee maintains that the malpractice claims are property of the bankruptcy estate both because they had accrued under state law at the time the bankruptcy case was filed and because the claims are "sufficiently rooted in the pre-bankruptcy past and so little entangled with the [Debtor's] ability to make an unencumbered fresh start that [they] should be regarded as 'property' [of the estate]." *Segal v. Rochelle,* 382 U.S. 375, 380 (1966). According to the Trustee, the transfer of the Maine property harmed the Debtor by exposing him "to claims from creditors that he had engaged in fraud and had violated the Uniform Fraudulent Transfer Act, G.L. ch. 109A." Further, the Trustee argues, the Debtor was aware of that harm prepetition as evidenced by a statement signed by the Debtor after retaining bankruptcy counsel in which the Debtor indicated that he understood "that the bankruptcy trustee will likely view this conveyance as a fraudulent transfer."

Gaffney argues that the claims are not property of the bankruptcy estate because the claims (if any) arose postpetition. Discounting the impact of the signed statement acknowledging the likelihood that the Trustee would view the transfer as fraudulent, Gaffney notes instead that the Debtor did not list a potential malpractice claim or any other claims against Gaffney in his bankruptcy schedules, nor did the Debtor testify to the possible existence of the malpractice claims at the meeting of creditors. Gaffney further contends that the Debtor was not harmed – the Debtor could not have claimed an exemption in the Maine property even if he had not transferred it, and he received a discharge without challenge under 11 U.S.C. § 727(a)(1) (allowing for the denial of a debtor's bankruptcy discharge based on a prepetition transfer made with the intent to hinder, delay, or defraud creditors).

3

II. <u>DISCUSSION</u>

"[S]tanding is a 'threshold question in every federal case, determining the power of the court to entertain the suit,'" *In re Eldorado Canyon Prop., LLC,* 505 B.R. 598, 600 (B.A.P. 1st Cir. 2014) (quoting *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 12 (1st Cir. 1996)), and this Court is "independently obligated" to review a party's standing in order to determine the Court's jurisdiction, *Weaver's Cove Energy, LLC v. Rhode Island Res. Mgmt. Counsel*, 589 F.3d 458, 467 (1st Cir. 2009). The filing of a bankruptcy petition creates an estate that consists of "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), which the Trustee is charged to liquidate, 11 U.S.C. § 704(a)(1). While "an unliquidated claim or cause of action is an 'interest in property' for purposes of § 541(a)(1)," *Casey v. Grasso (In re Riccitelli)*, 320 B.R. 483, 488 (Bankr. D. Mass. 2005), the Trustee has standing only to prosecute claims that are properly characterized as estate property. *Ostrander v. Van Dam (In re Mateer)*, 559 B.R. 1, 5 (Bankr. D. Mass. 2016).

"Section 541(a) defines what interests of the debtor are transferred to the estate but does not address the existence and scope of the debtor's interest in a given asset." *In re Brown*, No. 18-81242, 2019 WL 2070730, *2 (Bankr. C.D. Ill. May 9, 2019) (citing *Dumas v. Mantle,* 153 F.3d 1082, 1084 (9th Cir. 1998)). In determining whether a particular cause of action is property of the estate, some courts "have looked to whether, as of the petition date, a cause of action had accrued under applicable state law." *In re de Hertogh*, 412 B.R. 24, 28 (Bankr. D. Conn. 2009). Other courts, including several in this district, have held that the accrual of a cause of action is not determinative. Instead, relying on *Segal v. Rochelle*, 382 U.S. 375, 380 (1966) (decided under the former Bankruptcy Act), those courts have considered whether the cause of action is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an

4

unencumbered fresh start," that "the claim is more properly categorized as prepetition property that should come into the estate . . . ." *Riccitelli*, 320 B.R. at 490-91 ("The extent of a claim's accrual as of the petition date is relevant to determining the extent of its prepetition roots, but it is not the only factor and not necessarily a dispositive one); *see also Mateer*, 559 B.R. at 7 (the accrual of a cause of action as of the petition date is "not dispositive," but is a factor to be considered in determining the sufficiency of the prepetition roots of the claim); *Tomaiolo v. Rodolakis (In re Tomaiolo)*, 2002 WL 226133, *3 (D. Mass. 2002) (ruling that malpractice claims that had not accrued under state law as of the petition date were nevertheless property of the estate because the "claims were sufficiently in existence at the time of filing to have become part of [the] estate"). However, as the *Mateer* court noted, "[t]here does not appear to be any controlling authority in the First Circuit" as to whether the determination of estate property is to be made with reference to "*Segal's* multifaceted inquiry" or should be limited to "considering only whether a cause of action has accrued under state law when the bankruptcy petition is filed." *Mateer*, 559 B.R. at 6 n.5.

This Court begins its inquiry where it must begin all statutory inquiries, "with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Section 541(a)(1) clearly states that property of the estate consists only of those property interests that are extant at the time the petition is filed. "Section 541(a)(1)'s phrase 'as of the commencement of the case' operates as a temporal cutoff point, meaning that property interests that exist and belong to a debtor when the petition is filed are included within the bankruptcy estate, whereas property interests that the debtor acquires after the bankruptcy filing are not part of the estate, subject to certain exceptions stated in section 541." *Brown*, 2019 WL 2070730 at *2 (citing *In re Chernushin,* 911 F.3d 1265, 1270 (10th Cir. 2018)). Section 541 makes no reference "to whether

5

the property interest is so entangled with the debtor's fresh start that it should be excluded from the estate." *Id.* at 3. And it does not define estate property as those property interests that are "sufficiently rooted" in prepetition events. Thus, the plain language of § 541(a)(1) does not incorporate the *Segal* analysis into the present Bankruptcy Code for purposes of determining whether a particular asset constitutes property of the bankruptcy estate.

And, as the *Brown* court has recently observed, the "continuing viability of the 'sufficiently rooted' test must also be measured against the Supreme Court's decision in *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)." *Id.* at *4. In *Butner,* also decided under the Bankruptcy Act, but postdating the *Segal* decision, the Supreme Court made no reference to the *Segal* analysis when it held that, unless a federal property interest is at issue, the nature and extent of a debtor's property interests are to be determined according to relevant state law. *Butner*, 440 U.S. at 54-55. The Supreme Court has only twice cited to the *Segal* decision following its issuance, and has not cited to *Segal* at all following the enactment of the Bankruptcy Code. In contrast, in interpreting provisions of the Bankruptcy Code, the Court has continued to cite to *Butner* in reiterating that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner*, 440 U.S. at 54. *See Stern v. Marshall*, 564 U.S. 462, 495 (2011); *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 451 (2007); *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000); *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 324 (1993); *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992); *Ohio v. Kovacs*, 469 U.S. 274, 285-86 (1985).

Furthermore, while "[i]t is stated in the legislative history to section 541 that the 'result' of *Segal* is followed," that statement is made "without any reference to the 'sufficiently rooted' test."

6

*Brown*, 2019 WL 2070730 at *3.[3] Indeed, the legislative history goes on to reveal Congress's determination that although § 541's definition of estate property "will include choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others *more than they exist at the commencement of the case*." House Report No. 95-595, 95th Cong., 1st Sess. 367 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 82 (1978) (emphasis supplied).[4]

Given the plain language of § 541(a)(1), the subsequent issuance of and continued reliance on the *Butner* analysis, and the relevant legislative history, this Court agrees with the *Brown* court's conclusion that the *Segal* analysis did not survive the enactment of the Bankruptcy Code and that

> *Segal* should not be interpreted as setting forth a federal standard to be layered on to the property of the estate analysis under section 541, where property interests arising under state law are at issue. The common law "sufficiently rooted test" has been superseded by section 541(a)(1)'s requirement of a "legal or equitable interest . . . as of the commencement of the case."

*Brown*, 2019 WL 2070730 at *5.

---

[3] The *Segal* "result" was the Court's holding that:

> a claim for tax refunds which was applied for and received postpetition was property of the bankruptcy estate. The refunds were the result of carrying back, to income of prior years, losses which were sustained during the calendar year of bankruptcy and prior to the filing. Federal tax law permitted the claim to be made only after the calendar year had closed, which occurred after the bankruptcy filing. At the time of the filing, it was possible that the claim would be increased or decreased by losses incurred or income earned during the balance of the calendar year.

*Tomaiolo*, 205 B.R. at 14.

This result, though not the "sufficiently rooted" analysis, clearly survived the passage of the Bankruptcy Code as Congress intended. "The tax refund claim at issue in *Segal* was treated by the Court as a property interest in existence on the petition date. . . . The amount of the refund was uncertain, but the statutory right to a refund was unconditionally established as of the petition date." *Brown*, 2019 WL 2070730 at *3.

[4] In fact, the legislative history further indicates that § 541 would have the effect of overruling *Lines v. Frederick*, 400 U.S. 18 (1970), one of the two cases in which the Supreme Court relied on the *Segal* analysis in determining whether a debtor's property interest was property of the estate. House Report 95-595 at 368.

7

"Accordingly, the Court's analysis focuses on *when* (pre- or post-petition) and *to whom* (the estate or the post-petition debtor) a legally cognizable interest in the cause of action arose under the applicable state law." *de Hertogh*, 412 B.R. at 29. "If the resulting harm occurred prepetition, then the cause of action accrued prepetition and the Debtor['s] interest therein became property of the estate upon commencement of the bankruptcy case. If, however, the Debtor[ ] suffered no prepetition harm, [he] had no legally cognizable interest in [the malpractice claims] as of the Petition Date; any such interest would have arisen only post-petition when the cause of action accrued." *Id.* at 30-31.

Having narrowed the analysis to whether, as of the petition date, the malpractice claims had accrued under applicable Massachusetts law, the Court easily concludes that they did not. The Debtor's awareness or knowledge of potential claims is not dispositive; "the Court attributes no relevance to the date on which the Debtor became aware of [potential claims]. His awareness of the claim might be relevant to the statute of limitations but not to the accrual of the claim itself." *Riccitelli*, 320 B.R. at 492 n.17. The Trustee asserts that the malpractice claims arose prepetition based on the Debtor's "exposure" to possible prepetition fraudulent transfer claims and in light of the Debtor's awareness of potential "issues" with the transfer of the Maine property. However, the Trustee has not indicated any actual prepetition harm to the Debtor that would have resulted in the accrual of the claims alleged in the complaint.[5] Assuming the Debtor was harmed, that harm

---

[5] Under Massachusetts law, each of the claims raised by the Trustee against Gaffney require some showing of actual harm, injury, or damages. *See Latson v. Plaza Home Mortg., Inc.*, 708 F.3d 324, 326 (1st Cir. 2013) (breach of implied covenant of good faith and fair dealing requires a showing that the plaintiff "*destroy[ed] or injur[ed]* the right of the other party to receive the fruits of the contract") (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 583 N.E.2d 806, 820 (1991); *Druker v. Roland Wm. Jutras Assocs.*, 370 Mass. 383, 348 N.E.2d 763, 765 (1976)) (emphasis supplied); *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250 (1st Cir. 2010) (a successful claim under Chapter 93A requires a showing of injury); *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690, 46 N.E.3d 24, 39 (2016) ("To prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or

8

did not occur until the Trustee filed the adversary against the trust.[6] Because none of the claims raised by the Trustee had accrued prepetition, the claims are not property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). Accordingly, the Court rules that the Trustee lacks standing to prosecute the claims, the Court has no jurisdiction to adjudicate them, and the complaint must therefore be DISMISSED. A separate order in conformity with this Memorandum will issue forthwith.

DATED: June 28, 2019

By the Court,

*[signature]*

Elizabeth D. Katz
United States Bankruptcy Judge

---

her part of the contract; the defendant committed a breach of the contract; *and the plaintiff suffered harm as a result*.") (emphasis supplied); *Glenn v. Aiken*, 409 Mass. 699, 708-709 (1991) ("A tort plaintiff seeking damages for legal malpractice must establish that: (1) the attorney had a duty toward the plaintiff; (2) the attorney breached the duty by failing to exercise the proper degree of care; (3) the breach proximately caused the plaintiff's *injuries*.") (emphasis supplied); *Baker v. Wilmer Cutler Pickering Hale and Dorr LLP*, 81 N.E.3d 782, 789 (Mass. App. Ct. 2017) (to prevail on a breach of fiduciary duty claim, the : "plaintiffs must show: (1) the existence of a fiduciary duty; (2) breach of that duty; (3) damages; and (4) a causal connection between breach of the duty and the *damages*.") (emphasis supplied). Because Counts IV and VI, for unjust enrichment and an accounting, are necessarily dependent upon the Trustee prevailing on the other claims, those claims, too, were not in existence on the petition date.

[6] While not deciding the issue, it is difficult for this Court to discern any cognizable harm to the Debtor from the Trustee's eventual recovery in the fraudulent transfer action; that recovery was against the trust, not the Debtor.

9